UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KATHLEEN M. S., | Case No. 1:20-cv-00105-CWD |
| Petitioner, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| ANDREW SAUL, Commissioner of Social Security Administration, | |
| Respondent. | |

## INTRODUCTION

Pending before the Court for consideration is Kathleen S.'s Petition for Review of the Respondent's denial of social security benefits, filed on March 2, 2020. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will remand the decision of the Commissioner for further proceedings.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed a Title XIV application for supplemental security income on November 1, 2016, claiming disability beginning August 29, 2015. The application was denied initially and on reconsideration, and a hearing was conducted on November 2, 2018, before Administrative Law Judge (ALJ) Richard Opp. After considering testimony from Petitioner and a vocational expert, ALJ Opp issued a decision on January 31, 2019, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request for review on January 2, 2020.

Petitioner timely appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time the ALJ issued his written determination, Petitioner was fifty-four years of age. Petitioner has a GED, and her prior work experience includes work as a cashier, flagger, waitress, stock clerk, kitchen helper, and small products assembler.

## STANDARD OF REVIEW

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a

preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

The following issues are raised on appeal:

1.  Did the ALJ properly evaluate the medical opinions of Ashley Freeman, LCSW, Ann Marie Reed, PMHNP, and Michael Spackman, MD, in formulating the Petitioner's residual functional capacity?

2.  Did the ALJ properly consider Petitioner's age under the Medical-Vocational Guidelines?

Petitioner contends the ALJ erred with respect to his RFC assessment because he failed to properly evaluate the medical opinions of Petitioner's treatment providers.

Relatedly, Petitioner argues that the ALJ failed to consider Petitioner's age which, on the date of the decision, was less than six months shy of Petitioner's fifty-fifth birthday. Petitioner was thus in a borderline age category, as individuals age fifty-five or older are considered to be of advanced age. Had the ALJ considered Petitioner to be of advanced age., Petitioner argues the applicable medical vocational guideline would have required a determination of disabled.

The Court has reviewed the record, and finds that, while there is some evidence supporting Petitioner's claims, the ALJ did not commit error in weighing the medical opinion evidence. Although there may be some support for Petitioner's interpretation of the evidence, the Court may not substitute its judgment for that of the Commissioner. Accordingly, the Court finds the ALJ's RFC assessment was free from legal error. However, the Court finds that the ALJ erred with respect to his application of the Medical Vocational Guidelines. The Court's findings are further explained below.

## 1.     Medical Opinions

Petitioner argues the ALJ improperly weighed the medical opinion evidence, contending that the ALJ committed reversible error in his evaluation of the opinions of Michael Spackman, M.D., Ashley Freeman, LCSW, and Ann Marie Reed, PMHNP. Dr. Spackman conducted a consultative examination to assess Petitioner's physical limitations, while Freeman and Reed treated Petitioner's mental health disorder.

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v.*

*Comm'r Soc. Sec.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* SSR 96-2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996) (stating that a well-supported opinion by a treating source which is not inconsistent with other substantial evidence in the case record "must be given controlling weight; i.e. it must be adopted.").

Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining, reviewing physician's opinion. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d). In addition, the regulations give more weight to opinions that are explained than to those that are not, *see* 20 C.F.R. § 404.1527(d)(3), and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists, *see id.* § 404.1527(d)(5).[1]

Should the ALJ decide not to give a treating physician's opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length

---

[1] The agency has amended the regulations governing medical opinions, but they apply only to claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The ALJ correctly applied the rules applicable to Petitioner's claim, which was filed on November 1, 2016. *See* 20 C.F.R. § 404.1527.

of the physician-patient relationship, the frequency of evaluations, whether the

physician's opinion is supported by and consistent with the record, and the specialization

of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2).

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray*

*v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted), it is "not

binding on an ALJ with respect to the existence of an impairment or the ultimate

determination of disability." *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th

Cir. 2004). Rather, an ALJ may reject the uncontradicted opinion of a treating physician

by stating "clear and convincing reasons that are supported by substantial evidence."

*Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted);

*Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

However, "[i]f a treating or examining doctor's opinion is contradicted by another

doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons

that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (citation omitted);

*see also* SSR 96-2P, 1996 WL 374188 at *5 ("[T]he notice of the determination or

decision must contain specific reasons for the weight given to the treating source's

medical opinion, supported by the evidence in the case record, and must be sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the

treating source's medical opinion and the reasons for that weight."). "The ALJ need not

accept the opinion of any physician, including a treating physician, if that opinion is

brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Nurse practitioners and social workers are not considered acceptable medical sources under the applicable regulations. *See* 20 C.F.R. § 404.1513(a). "Only physicians and certain other qualified specialists are considered '[a]ccepted medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original). The ALJ may evaluate opinions of non-accepted medical sources using the same factors applied to evaluate medical opinions of accepted medical sources; still, the ALJ may give less weight to the opinions of non-accepted medical sources than to those of accepted medical sources. *See* SSR 06-03p, available at 2006 WL 2329939, at *5. Accordingly, the ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Loop v. Colvin*, 651 F. App'x 694, 696 (9th Cir. 2016).

**A. *Dr. Spackman's Opinions***

Dr. Spackman conducted a consultative physical examination of Petitioner on February 24, 2017. (AR 559 - 563.) During the examination, Petitioner stated she had done well after having an L3-4 laminectomy in 2015. (AR 559, 561.) She reported that recently, she began experiencing pain in the left low back that radiated to the lateral hip and left ankle, beginning in or about September of 2016. (AR 559.) However, she indicated that gabapentin "really helps." (AR 559.) Petitioner reported also experiencing numbness in her hands from time to time. (AR 559.)

After an examination, Dr. Spackman assessed Petitioner's range of motion, observing the following:

> **Gait:** abnormal gait with favoring her right leg and normal station while watching her walk when she was unaware she was able to put full weight on her left leg and she would use the cane more for balance than anything if it [sic] all, able to walk on toes and heels, able to do a full painless squat all though [sic] she used me [sic] hands to help her back up-not due to pain but more deconditioning, able to arise and sit down without problems, able to get on/off exam table without problems….
> **Cervical:** … painless ROM….
> **Thoracic:** … no tenderness over midline and paraspinals.
> **Lumbar:**…painless ROM, no tenderness over midline and paraspinals, no tenderness over sacroiliac joints, sciatic notch/piriformis or greater trochanters, although she reported a 'fullness' feeling over her left sciatica, neg SLR sitting and laying although her left lateral hip bothered her.
> **Joints:**…hands/wrists: normal rom, normal grip, no Heberden's or Bouchard's nodes, neg Tinels' at wrists and elbows, mildly positive Phalen's and reverse Phalen's.

(AR 560-61.) Dr. Spackman observed also that Petitioner was able to lift and carry light objects, take her clothing off and on without problems, make a fist, extend and oppose all fingers, and manipulate small objects. (AR 561.)

Based upon his examination findings, Dr. Spackman was of the opinion Petitioner could perform light work,[2] although he recommended limiting her walking and standing to four hours; limiting stairs, stooping and crouching to occasional; and limiting handling

---

[2] The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, and such work requires the ability to push and pull arm-hand or leg-foot controls as well as the ability to use arms and hands to grasp and hold objects. 20 C.F.R. § 404.1567; SSR 83-10.

and fingering to frequent as a precaution for her carpal tunnel syndrome. (AR 561.)

The ALJ largely adopted Dr. Spackman's physical limitations in his RFC assessment. (AR 21, 27.) He did, however, reduce Petitioner's lifting limitations to 15 pounds occasionally and 5 pounds frequently, and he determined Petitioner can frequently reach, handle, finger, or feel bilaterally. (AR 21, 27.) Petitioner argues the ALJ provided no support for his lifting and reaching determinations, because Dr. Spackman's opinion was silent as to how much weight Petitioner could carry in a day or how frequently Petitioner could reach. Petitioner contends that, if she was found capable of less than light work due to increased lifting, carrying, and reaching limitations, she would be found disabled. Petitioner claims the medical evidence of record, including MRI results from 2015 related to Petitioner's lower lumbar surgery and recent records from Terry Reilly Health Services later in 2017, support further limitations.

The basis for Petitioner's objection is unclear to the Court. Petitioner complains the ALJ "made up out of whole cloth" the RFC limitations for lifting, carrying, and manipulation. However, the evidence does not support Petitioner's objection. It is clear from Dr. Spackman's evaluation notes that he was of the opinion Petitioner could perform light work with some postural limitations. He prescribed no limitations for lifting, carrying, reaching, or manipulation. His notes indicate he observed Petitioner had no pain upon range of motion testing in her cervical, thoracic, and lumbar spine, and she had no difficulty with fine motor manipulation. Accordingly, given the definition of light work, Dr. Spackman was of the opinion Petitioner could lift up to 20 pounds at a time

with frequent lifting or carrying of objects weighing up to 10 pounds, and that she retained the ability to push and pull arm-hand or leg-foot controls as well as the ability to use her arms and hands to grasp and hold objects. 20 C.F.R. § 404.1567; SSR 83-10. *Cf. Terry v. Saul*, No. 19-56000 (9th Cir. May 28, 2021) (knowledge of the SSA's interpretation of "medium work" can be imputed to a qualified vocation expert). The ALJ nonetheless gave Petitioner the benefit of the doubt and assigned greater limitations than did Dr. Spackman in these functional areas. The Court finds no error.

There is substantial evidence supporting the ALJ's interpretation of the evidence. The ALJ relied upon Dr. Spackman's consultative examination findings, as well as the opinions of the non-examining state agency reviewing physicians, who were all of the opinion Petitioner could perform light work with its associated reaching, pushing, pulling, lifting, and manipulative requirements. (AR 26.) The ALJ explained that he assigned greater limitations than did Dr. Spackman to account for "any persisting lower extremity problems," and he assigned "little weight" to the opinions of the state agency reviewing physicians because they did not have the benefit of later treatment records. (AR 26, 27.) He discussed the medical evidence from Dr. Spackman indicating normal lumbar spine and other physical findings, as well as later treatment records from 2018 wherein Petitioner denied back pain, sciatica, and leg pain with exertion. (AR 23.) In other words, the ALJ credited the medical evidence indicating Petitioner complained of continuing pain and radicular symptoms, giving Petitioner's account of her physical

limitations some recognition.[3] The Court finds the ALJ appropriately resolved the conflicting medical evidence.

Petitioner contends other evidence provides support for assigning greater physical limitations than did the ALJ in the RFC, and that the ALJ failed to explain his reasoning for not crediting this other evidence. For instance, she contends that, on three occasions in 2017, Petitioner complained of sciatic nerve pain and low back pain. (Dkt. 13 at 19.) Petitioner recounts also her medical history from her hospitalization and resulting lower lumbar surgery in 2015. (Dkt. 13 at 18-19.) In essence, Petitioner argues the ALJ could have come to a different conclusion had the ALJ interpreted the evidence differently. However, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). When the evidence is susceptible to more than one rational interpretation in a disability proceeding, the Court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995); *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

The Court finds the ALJ's evaluation of the medical and opinion evidence

---

[3] Petitioner does not challenge the ALJ's credibility findings, and waived her right to do so. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) ("Appellants must raise issues at their administrative hearings in order to preserve them on appeal before this Court.").

regarding Petitioner's physical limitations is supported by substantial evidence in the record. Accordingly, the Court will not disturb the ALJ's findings.

### B. *Opinions of Ashley Freeman, LCSW, and Ann Marie Reed, PMHNP*

Based upon his evaluation of the evidence as a whole, the ALJ determined Petitioner retained the residual functional capacity to understand, remember, and carry out instructions that are short, simple, and detailed, but not complex. (AR 21.) Petitioner argues the ALJ's mental RFC determination is not supported by substantial evidence, because he did not properly weigh the opinions of Petitioner's treating therapist, Ashley Freeman, which in turn were supported by the opinions of nurse practitioner Ann Marie Reed. Petitioner contends the ALJ "grossly mischaracterized" the evidence, focused only on findings supporting his conclusions, and failed to provide sufficient reasons for rejecting Freeman's opinions. Petitioner contends that, had Freeman's opinions been given proper weight, Petitioner would have been found to be disabled.

Social worker Ashley Freeman provided counseling services to treat Petitioner's mental health condition during 2017 and 2018, diagnosing Bipolar 1 disorder and post-traumatic stress disorder. (AR 24 – 25, 596.) She provided a mental capacity assessment dated August 15, 2018. Although it is largely illegible due to the poor copy, the assessment indicates Petitioner has marked and extreme limitations in several functional areas, such as understanding and remembering information; concentration, persistence or maintaining pace; and adapting or managing oneself. (AR 666 – 668.) Freeman provided a second opinion contained in treatment notes dated September 10, 2018, where she

states "that due to severe damage to her brain from her illness Kathy is unable to work and will not be able to in the future due to her ability to concentrate and her consistent distraction and forgetfulness." (AR 27, 680.)

Reed treated Petitioner throughout 2017 and 2018, providing medication management for the treatment of Petitioner's mental health symptoms. (*See, e.g.,* AR 659, 670 - 675.) On August 21, 2018, Reed's treatment notes indicate that, in her opinion, "Kathy would not be able to perform the function of a 40 hr work week at this time, she would benefit from a[n] objective neuro psych testing." (AR 672, 677.)

The ALJ gave Freeman's mental capacity assessment little weight, because the opinions are "not well explained and it is inconsistent with the consultative examination findings and mental health treatment records indicating some abnormalities such as tangential thinking and flight of ideas, but also that the claimant is easily redirectable and generally pleasant and cooperative." (AR 27.) The ALJ also rejected the opinion of Freeman contained in her treatment notes, concluding the opinion is outside of her expertise and that the record contains no neurological testing or imaging providing support for her opinion. (AR 27.) Last, the ALJ assigned little weight to Reed's opinion because it is not well explained, it is vague, and it purports vocational expertise outside of her qualifications. (AR 27.)

In reaching his conclusions, the ALJ considered the findings of consultative examiner David Starr, Ph.D., as well as Freeman's and Reed's respective treatment notes. (AR 19 – 20, 23 – 26.) The ALJ noted that Dr. Starr's independent psychological

evaluation, conducted in March of 2017, revealed Petitioner was attentive and cooperative, she displayed no unusual mannerisms, and her speech was normal. (AR 24.) Dr. Starr assessed bipolar I disorder (mild to moderate) and PTSD. (AR 24.)

Next, the ALJ discussed Freeman's and Reed's respective treatment records revealing mostly normal mental status/psychiatric exam findings in May and August of 2017, although the ALJ did note that, in September and October of 2017, Petitioner displayed an anxious mood and tangential thought content. (AR 24.) Later, in November of 2017, Freeman noted Petitioner's manner was accessible, her orientation unimpaired, judgment and insight were good, and her affect was animated, although she displayed some abnormal behaviors such as flight of ideas and tangential content of thought. (AR 24.) Petitioner reported that medication was helping, and she was able to recognize her mood states. (AR 25.) In January of 2018, Reed noted Petitioner appeared alert and oriented, displayed a cooperative mood and her affect was engaged, although her speech was racing and pressured. (AR 25.) Later, in May and June of 2018, Freeman noted Petitioner displayed no psychiatric abnormalities, her mood was reportedly well, and that Petitioner had decreased her Seroquel. (AR 25.)

The ALJ assigned little weight to Freeman's and Reed's opinions on the grounds that they lacked explanation. An ALJ is not required to take medical opinions at face value but may take into account the quality of the explanation when determining how much weight to give a medical opinion. *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (citing *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. §

404.1527(c)(3)). While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, "the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." *Id.* (citing *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017), *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)).

The Court finds the ALJ provided legally sufficient reasons supported by substantial evidence in the record for rejecting Freeman's and Reed's opinions. Both opinions lacked an explanation or reference to the record providing support. The ALJ thoroughly examined the treatment history contained in the records maintained by Freeman and Reed, which revealed evidence of impairment from psychological symptoms but generally reflected normal mental health status examinations and appropriate thought content. Petitioner consistently reported her medications were helping her manage her symptoms. (AR 24 – 25.) Freeman and Reed noted also that Petitioner was able to function quite well with respect to activities of daily living, reporting that Petitioner cared for her mother while she was on dialysis in 2018, walked the dog, and was able to care for herself. (AR 25.) Other than observing instances of racing and pressured speech, Freeman and Reed consistently reported Petitioner maintained a cooperative mood, an engaged affect, and the ability to communicate effectively despite such symptoms. (AR 24 – 25.)

The ALJ concluded also that Freeman's and Reed's opinions regarding Petitioner's functioning were inconsistent with other evidence in the record. Substantial

evidence supports this conclusion. For instance, Freeman was of the opinion that Petitioner displayed extreme limitations in her ability to concentrate, persist, or maintain pace. However, Dr. Starr found that, during his mental status examination in 2017, Petitioner was attentive and cooperative, her verbal production was adequate, she was coherent and relevant, she cooperated with the assessment procedures, and she was correctly oriented to time, place, and person. (AR 19.) Further, the ALJ noted instances in the record where both Freeman and Reed indicated improvement in symptoms with medication, normal mental status findings, and no impairment in cognition, focus, memory, or concentration. (AR 24, 25.) Although Petitioner argues that the ALJ failed to recognize the inherently variable nature of mental illness, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v Astrue* 533 F.3d 1035, 1038 (9th Cir. 2008).

The Court cannot say that the ALJ's interpretation of the medical evidence in conjunction with his evaluation of Freeman's and Reed's opinions was not rational. The Court therefore finds the ALJ's conclusions are supported by substantial evidence. *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017). In light of the Court's conclusions, the Court finds the ALJ's mental RFC assessment to be free from legal error and supported by his evaluation of the medical opinion evidence in the record.

## 2. Medical Vocational Guidelines

The Medical-Vocational Guidelines have three age categories—(1) younger person (under age 50); (2) person closely approaching advanced age (age 50-54); and (3)

person of advanced age (age 55 or older). 20 C.F.R. §§ 416.963(c)(e). The regulations

provide that "[the agency] will not apply age categories mechanically in a borderline

situation." 20 C.F.R. § 416.963(b). That means that, "[i]f you are within a few days to a

few months of reaching an older age category, and using the older age category would

result in a determination or decision that you are disabled, we will consider whether to

use the older age category after evaluating the overall impact of all the factors of your

case." *Id*. (emphasis added). HALLEX I-2-2-42 clarifies that the ALJ considers "a few

days to a few months" to mean a period not to exceed six months. In borderline age

situations, an ALJ has discretion, but is not required, to use the older age category. *Id*. §

404.1563(b).

Petitioner was five months shy of her fifty-fifth birthday (and, thus, from

becoming a person of advanced age) when the ALJ denied her claim for social security

disability benefits. The ALJ treated Petitioner as a person closely approaching advanced

age instead of using the advanced age category, and concluded Petitioner is not disabled.

The ALJ did not explain in his decision why he did not treat Petitioner as being a person

of advanced age. Although the ALJ mentioned Petitioner's birthdate in his decision, he

referenced Petitioner's age as of the date she filed her application, when she was fifty-

two years of age. (AR 28.)

Petitioner argues the ALJ erred because he mechanically applied the age category

rules instead of considering Petitioner's borderline age category status as of the date the

ALJ denied her claim, which she argues would have required a finding of disabled under

the medical vocational rules. Petitioner asserts that the ALJ erred because he stated Petitioner's age as of the date of her application, rather than as of the date of the ALJ's written decision, arguing this must mean the ALJ did not consider the fact Petitioner was in a borderline age situation. Further, Petitioner faults the ALJ and the Appeals Council for failing to provide an explanation for categorizing Petitioner in the lower age bracket.

The Court finds the ALJ did not satisfy the requirement that he consider whether to use the older age category, and finds the facts here distinguishable from those in *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). In *Lockwood*, the United States Court of Appeals for the Ninth Circuit upheld the ALJ's determination to categorize the claimant as a person closely approaching advanced age, even though Lockwood was just over one month shy from being a person of advanced age on the date of the ALJ's decision. 616 F.3d at 1071-72. There, the court held the ALJ "clearly…was aware that Lockwood was just shy of her 55th birthday," because the ALJ mentioned in her decision Lockwood's date of birth, stated her age as of the date of the decision, and referenced 20 C.F.R. § 404.1563. *Id.* Consequently, the court concluded the ALJ's decision demonstrated that the ALJ knew she had discretion to use the older age category after evaluating the overall impact of all the factors of the claimant's case. *Id.* at 1072. The court was also satisfied that the ALJ did not apply the age categories mechanically, because the ALJ evaluated the overall impact of all the factors of Lockwood's case when she relied upon the testimony of a vocational expert.

Here, in contrast, the Court is not confident the ALJ satisfied the requirement to

consider whether to use the older age category. *Lockwood* requires the ALJ to consider a claimant's age at the time of the ALJ's decision. But here, the ALJ stated Petitioner's age at the time of her application, rather than at the time the ALJ made his decision. Nor did the ALJ reference 20 C.F.R. § 416.963(b) or Petitioner's proximity to "person of advanced age" status under 20 C.F.R. § 416.963(e). Rather, the ALJ referenced 20 C.F.R. § 416.963 generically. Hence, the Court cannot make the inference that the court made in *Lockwood*, where the ALJ correctly noted the claimant's age on the date of her decision and referenced 20 C.F.R. § 404.1563(b).[4]

Further, there is no indication in either the transcript of the proceedings conducted on November 2, 2018, before the ALJ, or in the written determination, that the ALJ anticipated the issue of Petitioner's advancing age. When the hearing was conducted on November 2, 2018, Petitioner was fifty-four years of age, and was not in a borderline age situation. The ALJ observed Petitioner wore a clamshell back brace, and used a cane. (AR 38-39, 53, 54.) The vocational expert was asked only to assume whether a person of Petitioner's age at the time of the hearing, with the additional physical and mental limitations the ALJ described, could perform light work. (AR 55.) The vocational expert was not asked to assume the same for someone of advanced age. Further, the vocational expert testified at the hearing that Petitioner had no transferable skills to sedentary work.

---

[4] 20 C.F.R. § 404.1563 and § 416.963 are nearly identical. *Lockwood* considered the ALJ's reference to 20 C.F.R. § 404.1563, which applied in that case because the claimant sought benefits under Title II of the Social Security Act. Here, in contrast, Petitioner seeks supplemental security income benefits under Title XIV of the Act, and the applicable regulation is 20 C.F.R. § 416.963.

(AR 56.) The ALJ did not issue his written determination until January 31, 2019. Had the ALJ considered the older age category, a person of advanced age with the RFC to perform the full range of light work with non-transferable skills or semi-skills would be deemed disabled. Medical-Vocational Guidelines Rule 202.06.[5] Since the grids might enable a finding of disability, the ALJ must consider application of the older age category. *See Schiel v. Comm'r of Soc. Sec.*, 267 F. App'x 660, 661 (9th Cir. 2008).

Upon review, the Appeals Council stated that it considered the borderline age situation, and found the "factors in the record do not support application of the higher age category." (AR 1.) Based upon the above discussion, however, it is unclear what factors the Appeals Council considered when reaching its conclusion. The hearing transcript and the ALJ's decision do not adequately reflect consideration of Petitioner's borderline age status, and the Appeals Council did not identify what it considered determinative in this regard. *See Little v. Berryhill*, 690 F. App'x 915, 917 (9th Cir. 2017) ("When a claimant is within a few months of reaching an older age category, the ALJ is required to demonstrate that she considered whether to use the older age category, which can be done by citing the claimant's age at the time the ALJ renders her decision and the applicable regulation.") (citing *Lockwood*, 616 F.3d at 1071-72.) The error is not harmless here,[6] as

---

[5] The ALJ considered the application of Medical-Vocational Guidelines Rule 202.14, applicable to a person closely approaching advanced age with non-transferrable skills or semi-skills. (AR 29.) Had Petitioner been capable of performing the full range of light work, Rule 202.14 would direct a finding of not disabled. However, the ALJ considered Petitioner incapable of performing the full range of light work. (AR 29.)

[6] Notably, Respondent did not argue that any error by the ALJ in failing to consider the next age bracket was harmless.

consideration of Petitioner's proximity to the next age bracket would have made a difference in the disability determination under Medical Vocational Rule 202.06.

The Court therefore finds the ALJ erred.

## CONCLUSION

Based on the above, the Court will remand this matter for further consideration.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: June 28, 2021

Honorable Candy W. Dale
United States Magistrate Judge